1

2

3

4

5          **UNITED STATES DISTRICT COURT**

6              **DISTRICT OF NEVADA**

7

8   CHANEL, INC.,                          )
                                           )
9                        Plaintiff,        )        Case No. 2:14-cv-00534-GMN-GWF
                                           )
10  vs.                                    )        **FINDINGS AND**
                                           )        **RECOMMENDATIONS**
11  ANTHONY L. WYNN a/k/a ANTHONY WYNN,    )
    an individual, d/b/a AJC JEWELLERY d/b/a )       Motion for Default Judgment - #23
12  AJC JEWELRY d/b/a AJC JEWELRY d/b/a    )
    AJC and DOES 1-10                      )
13                                         )
                         Defendants.       )
14  _____)

15         This matter is before the Court on Plaintiff Chanel, Inc.'s Motion for Default Judgment

16  (#23), filed on December 9, 2014.

17         **I.      Plaintiff's Motion for Default Judgment**

18         Pursuant to Federal Rule of Civil Procedure 55(b), a court has discretion to enter default

19  judgment following the entry of default by the Clerk of the Court. *See Aldabe v. Aldabe*, 616 F.2d

20  1089, 1092 (9th Cir. 1980). In exercising its discretion, a court may consider (1) the possibility of

21  prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the

22  complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning

23  material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy

24  underlying the Federal Rules of Civil Procedure facing decisions on the merits (collectively, "the

25  *Eitel* factors"). *See Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In making its

26  determination, the court assumes that the factual allegations of the complaint are true, except those

27  relating to damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

28  . . .

**1.      Prejudice to the Plaintiff**

Plaintiff will be prejudiced should a default judgment not be entered against the Defendants. To the extent that the Defendants have failed to defend this action, Plaintiff will be left without a judicial resolution of its complaint and the remedies it seeks if a default judgment is not entered in its favor. *See Ringcentral, Inc. v. Quimby*, 711 F.Supp. 2d 1048, 1058 (N.D. Cal. 2010) (finding that the defendant's failure to appear and otherwise defend the action left plaintiff without a remedy if a default judgment was not entered). Therefore, this factor weighs in favor of entering a default judgment against the Defendants.

**2.      Merits of the Claim / Sufficiency of the Complaint**

The second and third factors deal with whether the plaintiff has plead sufficient facts to support a claim on which the plaintiff may recover. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp 2d 1172, 1175-76 (C.D. Cal. 2002). The general rule is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see also* Fed. R. Civ. P. 8(b)(6).

Here, Plaintiff states claims for trademark infringement and counterfeiting, and false designation of origin. These are claims upon which relief can be granted, and Plaintiff has sufficiently plead these claims to fulfill the requirements of Federal Rule of Civil Procedure 8. A claim of trademark infringement and counterfeiting requires Plaintiff to show that the Defendants used Plaintiff's registered trademark 'in connection with the sale, offering for sale, distribution, or advertising of any goods or services.'" *Toyo Tire and Rubber Co., Ltd. v. Toyama Tyre Corp., Ltd.*, 2014 WL 4987876 at *5 (D. Nev. 2014) *quoting* 15 U.S.C. § 1114(1)(a). Plaintiff Chanel, Inc.'s complaint (#1) meets these requirements. Plaintiff claims that the Chanel Marks belong to Chanel, Inc., and that Defendants have been "promoting and otherwise advertising, selling, offering for sale and distributing counterfeit and infringing costume jewelry, including, necklaces, bracelets and earrings, handbags, wallets, and shoes bearing the Chanel Marks." (#1, pg. 8, ¶ 28). Plaintiff's Complaint sufficiently alleges a trademark infringement claim.

. . .

2

A claim of false designation of origin requires that the Plaintiff prove that the Defendants "uses a mark in a 'false or misleading fashion that is 'likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person' with respect to the plaintiff's mark." *Toyo Tire*, 2014 WL 4987876 at *5, *quoting* 15. U.S.C. § 125(a)(1)(A).  Plaintiff claims that the Defendants' use of the counterfeit Chanel products "is likely to create a false impression and deceive customers, the public and the trade into believing there is a connection or association between Chanel's genuine goods and the Defendants' Counterfeit Goods." (#1, pg. 6, ¶ 22).  Plaintiff has sufficiently plead a claim for false designation of origin.  This second factor weighs in favor of entering a default against the Defendants.

### 3.      Sum of Money at Stake

The fourth *Eitel* factor balances the amount of money at stake in relation to the seriousness of the defendant's conduct.  *See PepsiCo*, 238 F.Supp 2d at 1175-76.  In its Motion for Default Judgment (#23), Plaintiff claimed $298,050.00 in damages, which they request be tripled for the purposes of deterrence and for willfulness by the Defendants.  Plaintiff also requests that the Court award costs of $400.00 to compensate for the filing fee in this case. (#23, pg. 12).

The Latham Act provides that the Court may award to the prevailing party the defendant's profits, the damages sustained by the plaintiff, and the costs of the action. 15. U.S.C. § 1117(a).  In cases of counterfeit marks, the Court may enter judgment for any sum of the actual damages "not exceeding three times such amount."  *Id.*  The Court shall award treble damages if the violation of trademark consists of "intentionally using a mark or design, knowing such mark or design is a counterfeit mark... in connection with the sale, offering for sale, or distributions of goods or services," unless the Court finds extenuating circumstances.  15 U.S.C. § 1117(b).

Plaintiff alleges that the actual damages in this case amount to $298,050.00.  This is based on the manufacturer's suggested retail price for the items: $4,900.00 for handbags, $325.00 for bracelets, $925.00 for wallets, $300.00 for earrings, $1,775.00 for necklaces, and $675.00 for shoes. (#23-3, pg. 4, ¶ 9).  Plaintiff alleges that Defendants held in inventory 247 pairs of earrings, 74 bracelets, 82 necklaces, 7 handbags, 10 wallets, and 16 pairs of shoes. (#28-1).  Plaintiff bases this number on the investigation of Brittni Popp (#4-2, pgs. 107-113) and items listed for sale on

1    Flickr.com.  (#4-2, pg. 113, ¶ 4).  During the investigation, Investigator Popp estimated based on

2    her observation of the products that there were approximately 250 pairs of earrings, 70 bracelets,

3    and 70 necklaces in Defendants' inventory.  (#4-2, pg. 112, ¶ 14; #28-1, pgs. 1-2).  On Flickr.com,

4    Defendant listed for sale 16 pairs of earrings (#4-2, pgs. 119, 121), 4 bracelets (#4-2, pg. 121), 13

5    necklaces (#4-2, pgs. 119, 120), 7 handbags (#4-2, pgs. 119, 12)  7 handbags (#4-2, pg. 120), 10

6    wallets (#4-2, pg. 120), and 16 pairs of shoes (#4-2, pg. 120).  During the investigation,

7    Investigator Popp observed an estimated 250 pairs of earrings, 70 bracelets, and 70 necklaces.  (#4-

8    2, pg. 112, ¶ 14).  Throughout the course of the investigation, Defendants sold to Investigator Popp

9    one pair of earrings, three bracelets, and five necklaces (#4-2, pgs. 110, 113 ¶ 14, 18).  A lawful

10    seizure of Defendants' property yielded 18 pairs of earrings and one necklace.  (#23-4, pg. 2).  To

11    determine the total number of earrings, bracelets, and necklaces in inventory, Plaintiff added the

12    estimated number of items from Investigator Popp to the number available on Flickr.com, then

13    subtracted all purchased items and items seized.  For those items not observed by Investigator

14    Popp, Plaintiff submitted the number of items found on the Defendants' Flickr.com page.  When

15    multiplying the resulting 247 pairs of earrings, 74 bracelets, 82 necklaces, 7 handbags, 10 wallets,

16    and 16 pairs of shoes by the market value of those items, Plaintiff's damages amount to

17    $298,050.00.

18        Plaintiff offers substantial evidence to indicate the Defendant was aware of the counterfeit

19    nature of his goods.  The Declaration of Eric Berger, a private investigator in Miami Beach, details

20    the Defendant's previous arrest for selling counterfeit Chanel goods in Miami in October, 2013.

21    (#5-3, pgs. 52 - 57).  When being arrested, the Defendant stated that "I know I'm selling these

22    copies of the jewelry and I know it's wrong."  (# 5-3, pg. 53).  In January, 2014, Plaintiffs began to

23    investigate sales of counterfeit Chanel products by the Defendants in Las Vegas, Nevada.

24    Investigator Popp was able to purchase counterfeit Chanel goods from the Defendant on January

25    23, 2014, and the items were delivered on February 21, 2014 (#4-2, pgs. 109-110, ¶ 7, 9).  While

26    making the purchase, a woman named "Kristina," self-identified as the Defendant's mother,

27    admitted that "these are the best replica Chanel items," "they look exactly like the real Chanel

28    necklaces," and "you wouldn't even be able to tell that they aren't real Chanel."  (#4-2, pg. 109, ¶

4

7).  On March 14, 2014, Investigator Popp traveled to the Defendant's business, where the Defendant, identified as "Anthony," asked if they were "interested in all the Chanel fake stuff." (#4-2, pg. 111, ¶ 13).  Anthony noted that "everyone is getting in trouble for selling this stuff right now though, so we are super careful" and "you just get in a lot of trouble and they like to do raids around here, so keeping all this in my store doesn't really sit well with me you know."  (#4-2, pg. 112, ¶ 13).  During the visit, the Defendant admitted that "all of our stuff looks exactly like what the real stuff looks like," that "I get the best quality fake stuff around" and "there is a specific shipping company in China that everyone uses specifically just for shipping fake stuff into America.  I use that company."  (#4-2, pg. 113, ¶ 15).  The investigator was able to conclude that the items purchased from the Defendant were "non-genuine Chanel branded items."  (#4-2, pg. 112, ¶ 14)

Based on the totality of the evidence presented, the Court finds that the Defendants intentionally and knowingly sold counterfeit Chanel goods.  This finding allows the Court to award treble actual damages to Plaintiff.  With a finding of actual damages totaling $298,050.00, the total damages award is $894,150.00.  The damages requested by the Plaintiff are within the statutory range prescribed by 15 U.S.C. § 1117(c).  Because Plaintiff has demonstrated a statutory basis for monetary relief, the fourth *Eitel* factor favors Plaintiff.

### 4.      Possibility of a Dispute Concerning Material Facts

Defendants have filed no answer to the complaint in this case.  They were given the opportunity to dispute the material facts of Plaintiff's Complaint and chose not to do so.  Given the sufficiency of the Complaint, the evidence presented by Plaintiff, and the Defendants' default, there are no factual disputes that preclude the entry of default judgment.  The fifth *Eitel* factor weighs in favor of the Plaintiff.

### 5.      Excusable Neglect

The sixth factor considers the possibility that the Defendants' default may have been the result of excusable neglect.  *See Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F.Supp. 2d 916, 921 (C.D. Cal. 2010).  The Defendants were properly served in this action and chose not to respond.  The only action taken by the Defendants here was to stipulate to the preliminary

injunction. (#17). This indicates that the Defendants were not only properly served, but willing and able to act in their own defense. For the most part, they chose not to do so. The possibility that the inaction by the Defendants is the result of excusable neglect is remote. This factor weighs in favor of Plaintiff.

### 6.    Decision on the Merits

The final *Eitel* factor weighs against Plaintiff and against default judgment. "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. This preference alone is not dispositve. *See PepsiCo*, 238 F.Supp.2d at 1177. Defendants' failure to answer this action does not preclude default judgment, as it is not possible to determine a case on its merits when the defendant does not participate.

Taking all of the *Eitel* factors into consideration, the undersigned recommends that Plaintiff's motion for default judgment be granted.

### II.    Plaintiff's Motion for Permanent Injunction

Upon entry of default judgment, the Court may grant a plaintiff any relief requested in the complaint. *See Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962). A plaintiff's damages and the judgment must "not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See* Fed.R.Civ.P. 54(c). Plaintiff requested that the Court enjoin the Defendants from infringing any of Chanel's intellectual property rights, including the Chanel Marks. (#23, pg. 8).

A court may grant a permanent injunction where a plaintiff has shown it has suffered an irreparable injury and that legal remedies are inadequate. *See Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 543 (1987). The Court must also "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief" with "particular regard given to the public interest." *Id*. Here, these factors support a permanent injunction.

First, Plaintiff alleges that it has already suffered irreparable harm and will continue to do so in the absence of injunctive relief. (#23, pg. 8). Other remedies available are inadequate; indeed, "injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by the defendants' continuing infringement."

*Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

As evidenced by the fact that the Defendants are unlawfully using, selling, promoting, and making Plaintiff's patented products, the balance of hardship tips towards Plaintiff who is suffering due to this infringement.  Defendants face no cognizable hardship in being barred from infringing Chanel's trademarks, whereas Plaintiff faces loss of sales and damage to its reputation and goodwill.  The public interest will be served by a permanent injunction, as it is in the public interest to protect the trademarks of Plaintiff.

### RECOMMENDATIONS

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Default Judgment (#23) be **granted**.

**IT IS FURTHER RECOMMENDED** that a permanent injunction  be **granted**.

**IT IS FURTHER RECOMMENDED** that the surety bond posted by Plaintiff to secure the preliminary injunction be released upon entry of the permanent injunction.

**IT IS FURTHER RECOMMENDED** that Plaintiff be awarded $894,150.00 in damages.

**IT IS FURTHER RECOMMENDED** that Plaintiff be awarded $400.00 in costs.

**IT IS FURTHER RECOMMENDED** that Defendants and their officers, directors, employees, and agents be permanently enjoined, pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65(d), from engaging in infringing activities relating to the Chanel Marks.

**IT IS FURTHER RECOMMENDED** that Defendants be found to have willfully infringed Chanel, Inc.'s trademarks.

**IT IS FURTHER RECOMMENDED** that this Court retain jurisdiction over the parties to the extent necessary to enforce the terms of this Order and the injunctive relief provided herein.

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly

address and brief the objectionable issues waives the right to appeal the District Court's order

and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153,

1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

      **DATED** this 9th day of March, 2015.


_____
GEORGE FOLEY, JR.
United States Magistrate Judge